24948. FANNING *v.* THE STATE.

DECIDED NOVEMBER 1, 1935.

*Hugh E. Combs,* for plaintiff in error.

*J. Cecil Davis, solicitor-general,* contra.

MACINTYRE, J. James Fanning was found guilty under an indictment charging him with assault with intent to murder by cutting Irving Williams with a razor. The question for determination is whether the court erred in overruling Fanning's motion for new trial.

It is averred in the first special ground that the judge committed error in that, after instructing the jury that they could recommend that the defendant be punished as for a misdemeanor, he "did not go further . . and explain to the jury what punishment could be inflicted . . under a misdemeanor sentence." Under the ruling in *Cade* v. *State,* 41 *Ga. App.* 378 (2) (153 S. E. 76), the assignment of error is without merit.

It is contended in special ground 2 that the court erred in charging the jury as follows: "Before you would be authorized to convict the defendant of an assault with intent to murder in this case, you must believe beyond a reasonable doubt that he assaulted Williams with an instrument that, in the manner it was used at the time, was a weapon likely to produce death and under circumstances that if death had resulted it would have been murder." The assignment of error is that the court charged that before the jury would be authorized to convict the accused they would have to believe beyond a reasonable doubt that he assaulted the prosecutor "with a weapon likely to produce death," instead of charging them they would have to believe that he assaulted the prosecutor with a razor, as charged in the indictment. In the beginning of the charge the court instructed the jury as follows: "How, when, where, and in what manner the alleged offense is alleged to have been committed is set forth and described in the . . indict-

ment, which the solicitor-general has already read in your presence and hearing. . . To this bill of indictment the defendant has . . entered his plea of not guilty, and that raises the issue which you gentlemen are sworn and empaneled to try. I charge you that the burden of proof is upon the State to prove every material allegation of this bill of indictment · . . beyond a reasonable doubt." Immediately following the charge complained of, the court instructed the jury: "I charge you . . that if you believe beyond a reasonable doubt from the evidence that this defendant . . did assault the person named in the indictment . . in the manner charged," etc. Considering the charge as a whole, we are satisfied that the assignment of error is without merit. In this connection it might be observed that there was direct, positive, and unequivocal testimony that the cutting was done with a razor, while the only direct assertion that it was done with a knife comes from the defendant's statement to the jury.

The substance of the third and last special ground is, that, since a witness had testified that the prosecutor's character was bad and he would not believe him on oath, the court erred in failing (without request) to charge the jury "the law relating to impeachment of witnesses by proof of general bad character," as contained in the Penal Code of 1910, § 1053 (Code of 1933, § 38-1804), and the law as contained in the Penal Code of 1910, § 1054 (Code 1933, § 38-1805), declaring that "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court," and "In the absence of a proper written request, it is not error for the trial court to fail to instruct the jury on the subject of impeachment of witnesses." *Lewis* v. *State*, 125 *Ga.* 48 (53 S. E. 816). See also *Freeman* v. *Coleman*, 88 *Ga.* 421 (3) (14 S. E. 551); *Steed* v. *State*, 123 *Ga.* 569 (3) (51 S. E. 627). The assignment of error is without merit.

Irvin Williams testified in part: "I know John Fanning. I saw him on the 18th day of August, 1933. I was at Young's Chapel in Wilkes County. . . He cut me . . on the head. He cut me on the arm . . to the bone. He cut me with a razor. I had not said anything to him to make him cut me; . . he grabbed out a razor and cut me in the collar. He struck me up here [indicating], and I fell back, and he hit me on the arm, and he struck me here [indicating]. . . : I did not have a pistol

that day. . . I think James wanted to kill me, because he would have come back at me when he dropped his razor, but his brother grabbed him. . . I saw the razor. . . I saw him cut me with it. . . I did not run back and throw my hand in my back pocket. . . . I reckon it was cut through my skull. . . The way I lingered with it, I know it must have been cut through the bone. I could not sleep none lying down. I had to sit down in a chair and lay my head on three or four pillows. . . . I never seen James with that knife [indicating]. . . He could not cut through my head with this knife and cut through the hat." The knife with which the defendant said he cut the prosecutor was introduced in evidence. C. W. Combs, the defendant's employer, testified that shortly after the cutting the defendant told him "what happened," and "had a knife like the one [indicating] when he came, either that knife or one just like it;" and that witness "did not see any blood." The material part of the defendant's statement was to the effect that, without provocation, Williams, who was in the habit of carrying a pistol, "threw his hand to his back pocket," and the defendant, thinking "he might shoot," cut him on the head with a knife and ran. There was also evidence that Irvin Williams had been convicted of the offense of carrying a pistol. The evidence supported the verdict. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*